# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Jason Williams,
     Petitioner,


      vs.                    Case No. 1:07cv653
                               (Spiegel, S.J.; Black, M.J.)


Warden, Noble Correctional
Institution,
     Respondent.

---

## REPORT AND RECOMMENDATION

---

Proceeding *pro se*, petitioner, who is an inmate in state custody at the Noble Correctional Institution (NCI) in Caldwell, Ohio, commenced the instant habeas corpus action pursuant to 28 U.S.C. § 2254. (*See* Doc. 1). In the petition, petitioner asserts four grounds for relief challenging his 2006 convictions and sentences upon his entry of guilty pleas in the Butler County, Ohio, Court of Common Pleas to charges of attempted vehicular assault, failure to stop after an accident, failure to comply with an order or signal of a police officer, driving under suspension and escape. (*Id.,* pp. 2, 5-6).

On October 15, 2008, the undersigned issued an Order setting the matter for evidentiary hearing on claims alleged in Grounds One and Three that petitioner was denied his constitutional right to an appeal and that his trial counsel was ineffective in failing to file a timely appeal in accordance with petitioner's express instructions. (*See* Doc. 11). Counsel from the Federal Public Defender's Office was appointed to represent petitioner for purposes of the evidentiary hearing, which was held on April 20, 2009. (*See* Docs. 14, 16, 22).

This matter is now ripe for ruling. Presently pending before the Court are

the *pro se* petition (Doc. 1), respondent's return of writ with exhibits (Doc. 8), petitioner's *pro se* reply in opposition to the return of writ (Doc. 9), and the transcript of the evidentiary hearing held on April 20, 2009 (Doc. 23).[1]

## Factual And Procedural Background

In January 2006, the Butler County grand jury returned an indictment in Case No. CR2005-12-2157 charging petitioner with one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) (Count One); two counts of failure to comply with an order or signal of a police officer in violation of Ohio Rev. Code § 2921.331(B) (Counts Two and Four); one count of failure to stop after an accident in violation of Ohio Rev. Code § 4529.02 (Count Three); and one count of driving under suspension in violation of Ohio Rev. Code § 4510.11(A) (Count Five). (Doc. 8, Ex. 1).

The charges were based on the following incident, as summarized in a "Dispatch Narrative" by Middletown, Ohio, police officer Raymond Ortiz on May 26, 2005, which according to the indictment, was the date the incident occurred (*see id.*):

> Officers were advised that Monroe and Middletown officers had been in a vehicle pursuit into the City of Trenton from Engles Corner. Dispatch then advised that officers were now on foot pursuit of the suspect, Jason Williams (vehicle driver), behind Whitey's Pub. Myself and Sgt Greene responded to the area to assist by setting up a perimeter. I was then notified that as a result of the pursuit there was a traffic crash with injury at Burke St and Baltimore Ave. Upon arrival I also found that during the pursuit, Sgt Bowling of Monroe PD had crashed his police unit into two trailers in the yard of 2 Baltimore, while attempting to stop Williams. As a result of the trailers being pushed by the police unit, the rear of one trailer hit the adjacent garage, causing damage to the doors. The owner of 2 Baltimore, James Hensley, was not home at the time of the incident.

---

[1] Also included in the record before this Court is the transcript of the petitioner's deposition, which took place at NCI on March 30, 2009 at respondent's request in preparation for the evidentiary hearing; petitioner's appointed counsel represented petitioner at the deposition. (Doc. 20; *see also* Docs. 17, 19).

The passenger of the suspect vehicle was identified as Christy Herbert. She received a fracture of her upper left leg, and had to be extricated from the vehicle by the Trenton Fire Dept. She was then transported to Middletown Hospital by Trenton rescue squad. With the use of Middletown K-9, officers (Trenton, Monroe, Middletown, Butler County) searched for Williams but were unsuccessful....

(Doc. 9, Ex. E, p. 2).

On April 19, 2006, petitioner entered a guilty plea to an amended charge of attempted vehicular assault (Count One); the failure to stop count (Count Three); one of the failure to comply charges (Count Four); and the driving under suspension charge (Count Five). (Doc. 8, Ex. 2). On the same date, petitioner also entered a guilty plea in another Butler County criminal case, Case No. CR2006-03-0462, to a charge of escape in violation of Ohio Rev. Code § 2921.34(A)(1). (*See id.,* Ex. 5).

The executed plea agreements entered in both cases contained the following statement by petitioner: "I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal must be filed within thirty (30) days of my sentence." (*Id.,* Exs. 2, 5).

The plea entry in Case No. CR2005-12-2157 also provided: "No promises have been made except as part of this plea agreement stated entirely as follows: Merge Ct 2; Judge Sage indicated he would sentence the [defendant] to 5 years in prison. No other promises have been made." (*Id.,* Ex. 2). The executed plea agreement entered in Case No. CR2006-03-0462 contained a handwritten statement indicating that no "promises have been made as part of this plea agreement," and provided only that the maximum prison term for the escape offense was "5 years." (*Id.,* Ex. 5).

However, at the plea hearing held on April 19, 2006 in the combined cases, counsel for both parties clarified the sentencing recommendation contained in the plea agreements as follows:

PROSECUTOR: ....It's ... my understanding as part of this sentence that Judge Sage has indicated to the defense counsel, Mr. [Gregory] Howard, and the prosecutor ... that the defendant would receive a five-

year sentence combined on both of the case numbers....

****

DEFENSE COUNSEL: The statement of [the prosecutor] is correct as far as the plea.  It's also correct and it's also written on the plea form that Judge Sage has indicated that he will give Mr. Williams a five-year sentence – an aggr[eg]ated sentence in regard to these charges....

(*Id.,* Ex. 17, Tr. 3-4).

In addition, Judge Oney, who presided over the plea proceeding, engaged in a discussion with petitioner before accepting his guilty pleas to ensure the pleas were made knowingly, intelligently and voluntarily.  Specifically, the judge informed petitioner and asked if he understood that by pleading guilty, he was giving up his right to a jury trial, where the burden was on the State to prove "each and every element of the offense beyond a reasonable doubt;" all twelve jurors had to agree on a verdict of guilt; and petitioner had the right to confront the witnesses against him, to present witnesses in his defense, and to remain silent without giving testimony at trial.  (*Id.,* Tr. 6-8).  This discussion continued as follows:

THE COURT:   ....[W]hat I have here is a jury waiver on each of these cases.  Did you read those?

THE DEFENDANT:  Yes.

THE COURT:  Did you discuss that with your attorney?

THE DEFENDANT:  Yes.

****

THE COURT:  This is saying that you want to waive your right to a jury trial.  Is that what you want to do?

THE DEFENDANT:  Yes.

THE COURT:  You sure about that?

THE DEFENDANT:  Yes.

THE COURT:  Positive?

THE DEFENDANT:  Yes.

THE COURT:  You understand there will be no trial on [April] 25th?

THE DEFENDANT:  Yeah.

(*Id.,* Tr. 8-9).

The court turned next to discuss and ascertain petitioner's understanding of the specific charges involved in the plea agreements and their maximum penalties. (*Id.*, Tr. 9-11).  This colloquy between the judge and petitioner continued in pertinent part:

THE COURT:  Okay.  You understand that this case will go back to Judge Sage for sentencing?

THE DEFENDANT:  Yeah.

THE COURT:  All right.  Let's go through what could possibly happen here.  What could possibly happen is that the judge on these, sentences you to the max and consecutive on everything.  So you would be looking at a total possibility of 12 years.  Do you understand that?

THE DEFENDANT:  Yes.

\*\*\*\*

THE COURT:  The judge could give you 12 years, which is the maximum.  The parole authority then could put you on post-release control and you mess up on post-release control, and they could give you an additional six years.  You could possibly do 18 years on this. Do you understand that?

THE DEFENDANT:  Yes.

****

THE COURT:  ....Have any threats or promises been made to you to get you to plead to this, other than that Judge Sage indicated that he would sentence you to five years in prison and no other promises have been made?

THE DEFENDANT: Correct.

THE COURT:  You understand that.  That is his intention.  That is what he's going to do.

THE DEFENDANT:  Yeah.

THE COURT:  Other than whatever plea bargaining was involved here and that, have any other threats or promises been made to get you to plead to this?

THE DEFENDANT:  No.

THE COURT:  Are you entering this plea voluntarily, knowingly and intelligently?

THE DEFENDANT:  Yeah.

(*Id.,* Tr. 11-14).

The prosecutor then recited the factual bases for each of the charges against petitioner.  (*Id.,* Tr. 16-20).  Specifically, the prosecutor recounted in support of the attempted vehicular assault charge (Case No. CR2005-12-2157, Count One) that petitioner "swerved his vehicle at the police officer, who was in his motor vehicle. I don't believe the defendant actually hit the police officer's vehicle, but the defendant did swerve at it...." (*Id.,* Tr. 16-17).  The prosecutor also stated with respect to the "failure to stop" and "failure to comply" charges (Case No. CR2005-12-2157, Counts Three and Four) that petitioner fled the scene of the accident, which involved petitioner's girlfriend who was a passenger in the motor vehicle,

and that petitioner "caused ... over $3000 in damage to the property belonging to James Hensley." (*Id.,* Tr. 17-18). In addressing the escape charge in Case No. CR06-03-0462, the prosecutor stated that "on or about April 1st, 2005" petitioner failed to report to his parole officer in Butler County, Ohio. (*Id.,* Tr. 19-20).

Defense counsel was provided the opportunity to respond to the prosecutor's statement of the facts. Counsel stated:

> Judge, Ms. Herbert is present. She is Mr. Williams' girlfriend. She was the passenger in the car. She was injured in the accident. She has we believe recovered from that – from those injuries.

> Jason has told me and Ms. Herbert has also told me that – he did flee, there is no question. He didn't stop for the police officer. They had a warrant for him and he didn't stop and as opposed to running himself into a train, and Ms. Herbert into a train, he swerved and hit a junction box next to the railroad track. And then he further compounded his problems by running and taking off.

> He is sorry for what he's done. He's sorry for the injuries to Ms. Herbert especially.... He knows what he did was wrong and knows that ... if he [had] stopped the worse thing that probably would have happened to him was he would have had a driving under suspension charge.

> But he ... has insisted to me from the time that I started representing him and Ms. Herbert represented to me that at no time did he intentionally swerve toward the police officer that was giving him chase. And the only time that he did swerve was when he – the train there at the crossing in Trenton, and s[w]erved to the left and hit the box.
> Nevertheless, this plea has been the result of some extended plea negotiations, which I appreciate the prosecutor's office consideration in regard to the amendment of that Count 1 charge [to] ... attempted vehicular assault. And whatever statement of facts were read by [the prosecutor], we accept those statement of facts. I just wanted to explain to the Court what happened here.

(*Id.,* Tr. 20-21).

At that juncture in the proceeding, the court accepted petitioner's guilty pleas and set the matter for sentencing in front of Judge Sage at a later date. (*Id.,* Tr. 22). On June 1, 2006, petitioner was sentenced in accordance with the plea agreements entered in the two cases to terms of imprisonment totaling five years. (*See id.,* Exs. 4, 6, 18).[2]

At the sentencing hearing held as scheduled before Judge Sage on May 31, 2006 in the combined cases, petitioner, petitioner's family members and Ms. Herbert were allowed to personally address the court; they argued that petitioner should be shown "leniency" in part because the police chase and the prosecution of the two criminal cases stemmed from a "personal vendetta" of Monroe police officer Jeff Bowling, who was involved in the chase. (*Id.,* Ex. 18, Tr. 6-19, 21-22).

The prosecutor responded to these new charges by petitioner as follows:

Your Honor, the only thing I would say on behalf of the officer, is that I think the problem in this whole case is they want to blame everything on this officer. The comment that was made that this officer brought this all about, I think that is [a] problem with the defendant's thinking. I think that's a problem with his family's thinking and think that's a problem with society.

The reason this happened is because the defendant, had he stopped his vehicle, this probably would have ended with a driving under suspension, but he didn't. As a result, you have a person injured. You have an officer wrecking his cruiser trying to evade the car that has crashed. You had some private property damage, as well as some public property damage....

---

[2] Specifically, in Case No. CR2005-12-2157, petitioner was sentenced to an aggregate three-year prison term, which consisted of consecutive one-year sentences for the attempted vehicular assault, failure to comply, and failure to stop offenses; a six-month sentence also was imposed for the driving under suspension offense, but it was to be served concurrently to Count One. (*See* Doc. 8, Ex. 4; Ex. 18, Tr. 24). In Case No. CR2006-03-0462, petitioner was sentenced to a two-year prison sentence, to be served consecutively to the sentences imposed in Case No. CR2005-12-2157. (*See id.,* Ex. 6; Ex. 18, Tr. 24-25).

(*Id.,* Tr. 19).

      Officer Bowling also was permitted to respond to petitioner. He stated:

> Your Honor, ... – I'm just one officer. The criminal history that Jason
> has is from multiple agencies, multiple officers that have pursued him
> for the same, resulting in a crash and property damage and also
> physical injuries. For them to say that this is a personal vendetta, has
> nothing to do with that....
>
> I didn't know that we w[ere] here to beg for leniency. I thought we
> already agreed upon the sentencing. So if we're here to, you know,
> change the sentencing then we should go the other way and impose
> the fuller amount. Be we ... agreed on the five years, which we
> thought was the understanding with the defendant and also the family.

(*Id.,* Tr. 20).

      At the close of the proceeding, the court announced its sentencing
determination. In imposing the agreed-upon five-year sentence, the court stated:

> ....Well, first of all for the record, there was an agreed sentence
> between the State of Ohio and this defendant, which this Court did not
> participate in. As a matter of fact, this Court was ready to go to trial
> in this particular case. The matter was presented to another judge
> without consulting with this Court and there was an agreed sentence
> entered into without this Court being cognizant of that, but apparently
> there was an agreed sentence and the Court is ready to go forward
> with that agreed sentence today.
>
> For the record, Mr. Williams was originally charged with two separate
> ... indictments. The first one would have brought him a 21-year
> sentence of which under the law failure to comply with the order of a
> police officer, would have been by law consecutive to anything else
> he would have received. And in the second one, the escape charge
> and through plea bargaining process a 21 plus five-year sentence,
> which was the maximum 26 years, was reduced to a five-year agreed
> sentence.

So the Court – the record is clear, that Mr. Williams has an extensive criminal record, starting back in 1994. As an adult, he has petty theft, breaking and entering, auto theft, receiving stolen property, drug abuse, receiving stolen property, forgery two counts, domestic violence, domestic violence, failure to comply with the order of a police officer, which did not involve this police agency. I believe it's the sheriff.

The defendant fled from police officers in a pick-up truck and crashed into a yard. The defendant then ran on foot from officers. And then two weeks later, he has another failure to comply with a police officer over in Warren County, both of those counts he was given probation. Again, we're only up to 1996 by the way.

1996 failure to appear, '96 receiving stolen property and burglary, sentenced to three years in prison. In 1997, he has a burglary, sent to prison. In 1999, a burglary and two thefts, sent to prison. In 2003, unauthorized use of property. In June of 2004 [e]luding, which did occur in the City of Monroe. He has – then he has the escape and the vehicle case to which he's in front of the Court.

So, Mr. Williams, you have received every possible break the system could give you, in my opinion.... There is an agreed sentence and the Court intends to impose that.

(*Id.,* Tr. 22-24).


Petitioner did not file a timely appeal as of right from his convictions or sentences. On November 30, 2006, he filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Ohio Court of Appeals, Twelfth Appellate District. (*Id.,* Exs. 7-8). In the motion, petitioner did not make any reference to assignments of error that he planned to raise on appeal; he claimed as the "reason(s) for [his] failure to perfect an appeal as a matter of right" that:

I specifically instructed my attorney to file an appeal[,] which had to be filed by July 2006. However[,] after numerous attempts to contact him[,] my family contacted the Clerk of Court and asked for a

response. A few weeks ago I found out that never had my counsel
filed such request which deprived my right to such appeal. . . .

(*Id.*, Ex. 8).

On March 14, 2007, the Ohio Court of Appeals denied petitioner's motion
for leave to file a delayed appeal and dismissed the cause without opinion. (*Id.,*
Ex. 9).

Petitioner timely appealed to the Supreme Court of Ohio, asserting six
propositions of law in his memorandum in support of jurisdiction:

1. The entry decision of the Appeals Court resulted in a miscarr[ia]ge
of justice.

2. Conviction against the manifest weight of evidence.

3. The indictment was unlawfully induced.

4. Defendant is innocent due to the police misconduct and conspiracy
and Fourth Amend[ment] rights and due process.

5. Ineffective counsel and broken plea agreement.

6. Sentence is contrary to law.

(*Id.,* Exs. 10, 11).

On July 25, 2007, the Supreme Court of Ohio denied petitioner leave to
appeal and summarily dismissed the appeal "as not involving any substantial
constitutional question." (*Id.,* Ex. 13).

Petitioner commenced the instant action in August 2007. He alleges four
grounds for federal habeas relief:

**Ground One:** Denial of right of appeal.

**Supporting Facts:** My counsel failed in his duty to file an appeal
after specific instructions to do so, and upon [satisfaction of] the

reasonable explanation clause of App.R. 5 . . ., the Appeals Court abused [its] discretion by denying me my right to appeal, which created a miscarriage of justice.

**Ground Two:**  Conviction obtained against the manifest weight of evidence and unlawfully indicted.

**Supporting Facts:**  The facts . . . presented contradicted the indicted charges and the evidence to support a conviction, and also because I'm factually innocent due to the severe police misconduct and prosecutor misconduct by violating my Fourth Amendment rights and due process, which created plain error.

**Ground Three:**  Denial of effective assistance of counsel.

**Supporting Facts:**  Due to all the claims and failing to investigate which would [have] rendered a favorable outcome, and failure to argue the unlawful search & seizure, and forced me into a (broken) plea agreement.  And failed in his duty to abide [by] my wishes to raise revers[i]ble error and my instructions to file a[n] appeal or mistrial.

**Ground Four:**  Sentence is contrary to law & Constitution.

**Supporting Facts:**  The above claims create a manifest injustice to the sentence at hand, which the underl[y]ing facts warrant the sentence contrary to law and the Constitution of the United States.
(Doc. 1, pp. 5-6).

In the return of writ, respondent contends that by entering guilty pleas in the Butler County criminal cases, petitioner has waived the claim alleged in Ground Two of the petition, as well as the claims alleged in Ground Three that his trial counsel was ineffective in failing to investigate the charges and in failing to object to an "unlawful search & seizure."  (Doc. 8, Brief, pp. 7-8).  Respondent also argues (1) that petitioner has not shown, as alleged in Ground Three, that his trial attorney improperly induced him to enter the guilty pleas; and (2) that the sentencing-error claim alleged in Ground Four lacks merit.  (*Id.,* pp. 8-14).

An evidentiary hearing was held on April 20, 2009 on petitioner's remaining

claims alleged in Grounds One and Three that petitioner was denied his constitutional right of appeal and that his trial counsel was ineffective in failing to file a timely notice of appeal that he had requested.  The undersigned will consider these claims on the merits in light of the evidence introduced at the evidentiary hearing.

## OPINION

### A.  Petitioner Is Not Entitled To Relief Based On His Claims In Grounds One And Three That He Was Denied His Right Of Appeal And That His Trial Counsel Was  Ineffective In Failing To File A Timely Appeal On His Behalf

### 1. Findings Of Fact: Evidentiary Hearing

At the evidentiary hearing held on April 20, 2009, petitioner was the sole witness called by petitioner's counsel to testify in support of petitioner's position. Gregory Howard also testified at the hearing on respondent's behalf.

Petitioner was the first witness to testify.  He stated that "immediately after" the sentencing hearing in May 2006, when he, the judge, his parents, his girlfriend and other criminal defendants were still in the courtroom, he asked his trial counsel, Gregory Howard, off-the-record to file a notice of appeal for him.  (Doc. 23, Tr. 14, 25).  No one present in the courtroom at that time heard petitioner make this request.  (*Id.,* Tr. 26).

When asked why he wanted to file an appeal, petitioner responded:

Well, at sentencing, I heard Judge Sage, as he sentenced me, immediately in the proceeding he said that he didn't have nothing to do with this plea agreement, that this Court wasn't aware of it.  I'm not sure of the exact wording of it, but to the extent that he wasn't aware and didn't participate in the plea agreement, that his only knowledge was that I wanted to go to trial in this matter.

(*Id.,* Tr. 15).  Petitioner stated that he "knew somebody had lied to me" because the plea agreement provided that "Judge Sage indicated he would give me five years, and, ... he's telling me [at the sentencing hearing] he knew nothing about it."  (*Id.*).

Petitioner testified that "first and foremost" he planned to challenge the plea agreement on appeal. (*Id.*). When asked by the undersigned magistrate judge what the basis for such an appeal would be given that petitioner received the sentence he had bargained for, petitioner responded:

> I received the five years, but had this lie not been told, I may not have got the five years. I may have got a lesser sentence from Mr. Sage.

(*Id.,* Tr. 31-32).

Petitioner testified further that he wanted to challenge the conduct of the police officer involved in the chase and to point out "inconsistencies throughout the case." (*Id.*, Tr. 15).[3] Petitioner stated:

> As we were standing in front of the jury box, I told [Howard], you know, something isn't right in this case here. I said, "Could you"– you know, "Would you file an appeal?" And he nodded his head at me and told me everything, you know, would be all right.

(*Id.,* Tr. 17).

Petitioner testified that he first learned that no appeal had been filed on his behalf "four months down the road" around "the end of September, first of October" of 2006. (*Id.,* Tr. 18). Petitioner asked his parents to contact Howard to "see if an appeal had been filed." (*Id.,* Tr. 19). When they were unable to reach Howard, they asked Howard's secretary to check into the matter; the secretary informed them a few days later that "they had nothing on their record that Mr. Howard had filed." (*Id.*). Petitioner's parents contacted the clerk of courts at that point and discovered then that no appeal had been filed by Howard. (*Id.*).

On cross-examination, petitioner conceded that he discussed with his counsel the two plea forms, both of which expressly provided that petitioner understood his "right to appeal a maximum sentence, [his] other limited appellate rights, and that any appeal must be filed within 30 days of ... sentence." (*Id.,* Tr.

---

[3] Petitioner specifically claimed that the police officer ran him over with his cruiser. (Doc. 23, Tr. 15).

21-23). Petitioner also conceded that when he signed the plea entries, he assumed that he would receive a five-year prison sentence, which was in fact imposed; that he was not under the influence of drugs or alcohol at the time; that no threats were made to induce the pleas; that "no other promises, other than the five-year sentence, were made to [him];" and that he entered the pleas voluntarily. (*Id.,* Tr. 23-24).

Petitioner testified that he did not tell his attorney "specifically what the problems were" when he asked counsel to file a notice of appeal on his behalf. (*Id.*, Tr. 25). Nor did petitioner ever contact Howard to ask about the status of the appeal or otherwise discuss the issues to be raised on appeal. (*Id.,* Tr. 26-27).

Finally, on cross-examination, petitioner conceded that he had received an "unfavorable decision from the federal district court" in a civil lawsuit that he had filed against police officer Jeff Bowling, who allegedly had a "personal vendetta" against him; the matter apparently is currently pending before the United States Court of Appeals for the Sixth Circuit. (*Id.,* Tr. 30).[4]

Gregory Howard testified that he is an attorney licensed in Ohio, who has been "practicing law" since 1987. (*Id.,* Tr. 34). Sixty percent of Howard's practice is criminal defense work, and in the over 21 years he has been practicing law, he has assisted criminal defense clients with guilty pleas in "hundreds" of cases. (*Id.*). When asked about the "extent of [his] appellate practice," Howard responded:

> I have filed notices of appeals on behalf of some of my criminal clients. I have filed notices of appeals on behalf of some of my domestic relations court clients. I have prepared two briefs and have argued those cases and/or submitted those briefs to the 12th District Court of Appeals.... But other than that, that's the extent of my appellate practice. Most of my work is trial work.

---

[4] Petitioner filed the civil action pursuant 42 U.S.C. § 1983 with this Court in the case entitled *Jason Williams v. Jeff Bowling,* No. 1:07cv146 (Barrett, J.; Hogan, M.J.). Petitioner alleged in that case that Bowling violated his constitutional rights under the Eighth, Fourth and Fourteenth Amendments in the incident giving rise to the Butler County criminal charges in Case No. CR2005-12-2157. The District Court rejected petitioner's claims and granted summary judgment in favor of the defendant. Case No. 1:07cv146 (Docs. 29, 36, 37).

(*Id.,* Tr. 34-35).

Howard testified that he was retained by petitioner's family to represent petitioner in the Butler County criminal cases; Howard represented petitioner for a three to four month period beginning in February 2006 and ending with petitioner's sentencing in late May 2006. (*Id.,* Tr. 35).[5]

Howard stated that he took the following "actions" after he was hired to represent petitioner:

> I spoke with the attorney that had been appointed to represent him.... I talked with the prosecutor.... I reviewed the discovery that [petitioner's appointed] counsel had in the file, which I believe he made me a copy of. I also filed a request for discovery on my own, as well as a request for a bill of particulars, to the get the information to see if there was any additional information from the prosecutor. I did get a copy of the preliminary hearing transcript ... and reviewed that.
>
> I interviewed witnesses. I interviewed Sergeant Bowling one day in court when we were there for a hearing. I met with Mr. Williams. I met with his family members. I met with his girlfriend Christie Herbert, ... who was the passenger in the car at the time.
>
> Entered into plea negotiations with ... the prosecutor, and had at least one, maybe two discussions with Judge Sage, who was the common pleas court judge that was assigned the case.

(*Id.,* Tr. 38-39).

Howard could not recall the number of times he met with petitioner, but said: "I thought we had a good relationship during the period of time that I represented him." (*Id.,* Tr. 39). He stated that after investigating the case, he reached a decision about the "best course of action" for petitioner, which was to

---

[5] Howard testified that he also represented petitioner's brother "around the same time" on "sexual abuse allegations." (*Id.,* Tr. 36). In that case, Howard filed a notice of appeal on the brother's behalf when the brother was found guilty after a jury trial; another attorney handled the appeal. (*Id.,* Tr. 37).

enter a plea agreement.  (*See id.,* Tr. 39-41).  When asked why he thought a "plea agreement was the best course of action," Howard explained:

> Well, based on the allegations, he had led the police on a chase through the city of Trenton.  He had crashed his vehicle.  He had left his girlfriend in the vehicle and, as they called it, I don't know how true, but left her for dead.
>
> She had some very serious injuries, had a broken leg.  She had to be air-cared or at least transported by ambulance somewhere.  She may have been air-cared.  I'm not sure.  But he led the police on this chase, didn't stop, didn't comply with the orders of the police officer.  And facing the amount of time that he was facing in front of Judge Sage, I knew that if he went to trial and was convicted of the charges ... that he faced a very lengthy sentence.

(*Id.,* Tr. 40-41).

Howard assessed petitioner's "chances at trial" as "[n]ot very good, based upon the evidence."  (*Id.,* Tr. 41).  He said that he would have called Christie Herbert as a defense witness, as well as petitioner if petitioner "chose[] to take the stand," but that he did not believe there were any other witnesses who would have been able to testify on petitioner's behalf at a trial about the events that took place on May 26, 2005.  (*Id.*).

Howard testified further:

> Based upon the charges that he had, he was facing up to 21 years on the charges that dealt with the police chase, and then another five years, up to five years, on the escape charge.
>
> I met with ... the prosecutor, who originally offered to amend the felonious assault charge from a felony one to a felony of the second degree....  I believe I discussed that with Jason.  That was unacceptable.
>
> We were set for a trial, had a pretrial in front of Judge Sage, spoke with Judge Sage and the prosecutor in Judge Sage's chambers.  The

prosecutor was willing to amend the charges a little bit further but insisted that Mr. Williams serve a sentence of six years in the Ohio Department of Corrections.

I discussed that with Mr. Williams. That was not acceptable to him. We ultimately worked it out to where Judge Sage indicated he would ... sentence Mr. Williams to a total of five years on all the whatever charges were able to be worked out and pled to. And based upon that agreement, we entered into a plea arrangement on both cases with the understanding that he would be sentenced to a total of five years.

(*Id.,* Tr. 39-40).

Howard said that before the plea hearing in April 2006, he sat in Judge Oney's courtroom with petitioner and "explained the [plea] forms to him, read them to him word for word, asked him if he understood them, and had him sign the forms." (*Id.,* Tr. 43-44). Howard spent approximately fifteen to twenty minutes going over the plea forms with petitioner in accordance with his "common practice" and believed that petitioner understood the agreement and entered into it voluntarily. (*Id.,* Tr. 44-45).

Howard recalled that petitioner's family was upset when the five-year sentence was imposed, but that petitioner appeared to accept the sentence and "was not upset outwardly." (*Id.,* Tr. 46). Howard did not recall being asked or directed by petitioner or any member of petitioner's family to file an appeal after the sentence was imposed. (*Id.*). Nor did Howard recall petitioner ever expressing an interest in taking an appeal during the course of his representation of petitioner. (*Id.,* Tr. 46-47). Howard did not believe he had any contact with petitioner after petitioner was sentenced and sent to prison; nor could Howard find any correspondence in his case file requesting "or relating at all to" an appeal of petitioner's case. (*Id.,* Tr. 47).

Howard testified that he has represented criminal defendants who have indicated to him that they wanted an appeal. (*Id.*). He said that in cases involving guilty pleas, he would tell his clients that they "pretty much give up all [their] appeal rights" by pleading guilty; however, Howard stated that in the "unusual" case where a client who has entered a guilty plea has requested an appeal:

> I think I have a responsibility, as the attorney of record still, to protect their rights, preserve the record, and file the notice of appeal. So I have done in the past for the clients that have insisted on me filing a notice of appeal, regardless of whether I think it has merit.

(*Id.,* Tr. 48-49).

Howard testified further that "ignoring a request for an appeal" is not "an option" for him, and that he would not have disregarded any request by petitioner to file an appeal in this case. (*Id.,* Tr. 49). Howard said: "I'm sure I would have filed the notice of appeal and discussed with his family the opportunity to hire an attorney or how they would go about getting court-appointed counsel." (*Id.*).

When later asked by the undersigned whether "it would be accurate to say that you specifically recall that [petitioner] did not instruct you to file an appeal," Howard responded: "Honestly, I can't tell you if he did or not. My recollection is I do not recall him ever doing that." (*Id.*, Tr. 64). On further questioning on re-direct examination by respondent's counsel, Howard explained that because his representation of petitioner happened so long ago, "I don't recall every single thing. So I don't recall him ever instructing me to file a notice of appeal." (*Id.,* Tr. 65). Howard continued:

> But if he would have insisted or instructed me to do so, all it takes is me to go in my word processing software to print it out and to file it with the court. It would have taken me five minutes to do it.

> And I don't recall him ever doing that, and to me, if I didn't do that, then he didn't do that, but I don't recall him ever telling me to do it.

(*Id.*).

On cross-examination, Howard testified about his "detailed recollection" of Judge Sage's involvement in the plea negotiations. (*Id.,* Tr. 54). Howard "specifically recall[ed] sitting in Judge Sage's chambers with ... the prosecutor, who insisted that Mr. Williams do at least six years in prison." (*Id.*). Howard continued:

> And I was not in agreement to that, and I remember Judge Sage

saying, "He's looking at five years with me." I remember [the prosecutor], after a short period of time, saying, "So six years?" and Judge Sage saying, "No. I said five."

(*Id.*).

Howard also had a "good recollection of the amount of time [petitioner] was going to get, because [the prosecutor] and I ... don't always get along." (*Id.,* Tr. 55). Howard said:

And I remember talking to a friend of mine who is in the prosecutor's office about the case and talking about the amount of time that [the prosecutor in this case] was insisting, and that prosecutor, who is now a common pleas court judge, saying that "Six years is a lot of time. He just doesn't get it," meaning [the prosecutor in this case].

So I specifically recall that part of the conversation, because ... [the prosecutor] wasn't happy with Mr. Williams and wanted him to get as much time as he could. So I remember talking to him about that....

(*Id.*).

Howard testified that he was "surprised" when Judge Sage suggested at the sentencing hearing in May 2006 that he "knew nothing about this agreed sentence." (*Id.,* Tr. 56). Howard disagreed with Judge Sage's version of events and stated, "I can't speak for Judge Sage as to what he recalls or doesn't recall, but I know what I recall in this case." (*Id.,* Tr. 56-57). Howard did not attempt to correct Judge Sage on the record at the sentencing hearing; Howard said he "was not going to interrupt a judge," and after the sentence was imposed, "didn't see the need to since [Judge Sage] gave [petitioner] a sentence of five years." (*Id.,* Tr. 57-58). Howard stated that if, however, Judge Sage had sentenced petitioner "to more than five years, then ... I certainly would have spoken up in regard to that." (*Id.*).

Finally, on cross-examination, Howard testified that he did not "feel the need to explain" to petitioner Judge Sage's statement indicating his lack of involvement in the plea negotiations resulting in the agreement to a five-year sentence. (*Id.,* Tr. 59). Howard averred: "There is no indication [in the record] where Mr. Williams interrupted the judge, objected, stopped what the judge was

doing, turned to me and said 'What's going on,' or anything like that. So no." (*Id.,* Tr. 60).

## 2. Conclusions Of Law

In this case, petitioner does not contend that he was denied his constitutional right of appeal because he was not informed or unaware of that right when he was convicted and sentenced upon entry of his guilty pleas in this case.[6] Instead, petitioner argues, as alleged in Grounds One and Three of the petition, that he was deprived of his right to an appeal because his trial counsel failed to file a timely notice of appeal on his behalf in accordance with petitioner's express instructions given immediately after the sentencing hearing on May 31, 2006. (*See* Doc. 1, pp. 5-6).

As respondent has conceded in the return of writ, a "lawyer who disregards specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally deficient." (Doc. 8, Brief, p. 6) (citing *Roe v. Flores-Ortega,* 528 U.S. 470, 476 (2000) (in turn citing *Rodriguez v. United States,* 395 U.S. 327 (1969), and *Peguero v. United States,* 526 U.S. 23, 28 (1999)). In *Roe,* the Supreme Court held further that if counsel does not "file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." *Roe,* 528 U.S. at 477 (quoting *Peguero,* 526 U.S. at 28). The Court explained:

> This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Id.*

Here, the undersigned ordered an evidentiary hearing because the facts

---

[6] Indeed, petitioner is unable to prevail on such claim because the executed plea agreements expressly provided that he had a limited right of appeal, which he had to exercise within thirty (30) days of sentencing. (*See* Doc. 8, Exs. 2, 5). In addition, given petitioner's extensive criminal record, it is unlikely he was unaware of his appellate rights.

underlying petitioner's claims had not been developed in the state courts, and the record was inconclusive to the extent it contained only the conflicting affidavits of petitioner and his trial counsel, Gregory Howard. (*See* Doc. 11). In setting the matter for evidentiary hearing, the undersigned acknowledged that some courts have denied habeas relief "based solely on a weighing of the credibility to be accorded the differing version[s] of events presented in the conflicting affidavits." (*Id.,* pp. 4, 7) (and cases cited therein). However, out of an abundance of caution, and in light of other case-law holding that an evidentiary hearing is necessary in such cases, a hearing was ordered so that the Court could better assess and make factual determinations about the affiants' credibility. (*Id.,* p. 7) (citing *Watson v. United States,* 493 F.3d 960, 964 (8th Cir. 2007) (and cases cited therein)).

As discussed in the Order setting the instant matter for evidentiary hearing, petitioner bears the burden of showing by a preponderance of the evidence that he explicitly instructed his trial counsel to file a timely appeal on his behalf, which counsel failed to honor. (*See id.*) (citing *Stone v. Moore,* No. 2:07cv363, 2008 WL 4372696, at *5 (S.D. Ohio Sept. 23, 2008) (Frost, J.; Abel, M.J.) (unpublished) (citing *Faught v. Cowan,* 507 F.2d 273, 275 (6th Cir. 1974), *cert. denied,* 421 U.S. 919 (1975)).[7]

Here, after hearing the affiants' testimony and observing their demeanor at the evidentiary hearing on April 20, 2009, the undersigned finds that petitioner's version of events lacks credibility and that neither petitioner nor any member of petitioner's family instructed Howard to file an appeal on petitioner's behalf within the requisite 30-day appeal period after the sentencing hearing on May 31, 2006.

Petitioner's appointed counsel acknowledged in closing argument at the evidentiary hearing that Howard is a "very experienced criminal law practitioner" and "actually has very, very good credentials." (Doc. 23, Tr. 69). As respondent's

_____

[7] *See also Wolfe v. Randle,* 267 F.Supp.2d 743, 748 (S.D. Ohio 2003) (Spiegel, S.J.) ("The petitioner bears the burden of showing by a preponderance of the evidence that he was not advised of his [appellate] rights."); *Crowe v. Brunsman,* No. 1:07cv988, 2009 WL 87419, at *4 (S.D. Ohio Jan.12, 2009) (Beckwith, S.J.; Hogan, M.J.) (unpublished). *Cf. Morris v. Payton,* 283 F.Supp. 63, 66-67 (W.D. Va. 1968) (citing *Johnston v. Zerbst,* 304 U.S. 458, 469 (1938), and *Walker v. Johnston,* 312 U.S. 275, 286 (1941)) (holding after an evidentiary hearing that petitioner failed to sustain his burden of proving by a preponderance of the evidence that his "constitutional right to an indigent appeal was properly invoked").

counsel pointed out further in closing argument, no evidence was presented of any legal malpractice suit or complaint lodged against Howard in his over 21 years of legal practice. (*Id.,* Tr. 70-71). Indeed, the undersigned finds the Howard competently represented petitioner in the criminal cases challenged in the instant action.

The undersigned believes Howard's testimony regarding the substance of the plea negotiations, including his recollection of Judge Sage's involvement in the matter which was corroborated by the prosecutor and memorialized in the plea entry filed in Case No. CR2005-12-2157. Petitioner has not disputed Howard's testimony that the prosecutor initially refused to agree to a sentence of less than six years because he wanted petitioner "to get as much time" as possible. (*Id.*, Tr. 55). Therefore, the undersigned gives great weight to the prosecutor's corroboration in the plea agreement executed by petitioner, and to the agreement of defense counsel and the prosecuting attorney that Judge Sage "indicated he would sentence the [defendant] to 5 years in prison." (*See* Doc. 8, Ex. 2).

The undersigned also believes Howard's testimony that despite his inability to recall whether petitioner instructed him to file an appeal, he would have filed a notice of appeal on petitioner's behalf if petitioner had indeed made such a request. Although Howard testified that clients like petitioner who plead guilty "effectively waive all their rights for appeal," he understood his "responsibility, as the attorney of record still, to protect their rights, preserve the record, and file notice of appeal ... regardless of whether I think it has merit." (Doc. 23, Tr. 48-49). Howard pointed out that it was his practice to do so for other clients who insisted on filing an appeal, and the undersigned has no reason to doubt Howard's testimony that he would have performed the simple five-minute task for petitioner as well. (*See id.,* Tr. 65).

The undersigned is further convinced that no request was made for an appeal in this case given that petitioner received the bargained-for, five-year sentence contained in the parties' plea agreement despite Judge Sage's insistence that he himself "did not participate in" or was otherwise aware of the agreed sentence. Although petitioner argued at the sentencing hearing for an even more lenient sentence, it is clear from the executed plea entry in Case No. CR2005-12-2157, the transcript of the April 19, 2006 plea hearing, and petitioner's own testimony at the evidentiary hearing that petitioner voluntarily entered the plea agreement for a five-year sentence. (*See* Doc. 8, Exs. 2, 17; Doc. 23, Tr. 23-24).

Petitioner did not attempt to withdraw his guilty pleas in the one-month period prior to his sentencing based on any of the concerns mentioned by him at the evidentiary hearing about the agreed-to sentence, the conduct of the police officer involved in the chase, or any other "inconsistences throughout the case." (*See* Doc. 23, Tr. 15).  Nor did petitioner ever discuss with Howard the issues he wanted to raise in any appeal.  Moreover, although petitioner may have been confused by Judge Sage's statements at the sentencing hearing, he did not voice any concerns on the record at that time and, like Howard, had no reason to do so given that the bargained-for sentence was in fact imposed.  Judge Sage never indicated at the sentencing hearing that he would have imposed a lesser sentence if the parties had not agreed to the five-year sentence.  Indeed, to the contrary, it appears that Judge Sage, who expressed concerns about the severity of the criminal charges and petitioner's extensive criminal record, more likely was inclined to impose a harsher sentence.  (*See* Doc. 8, Ex. 18, Tr. 22-24).

Finally, petitioner's self-serving testimony is the only evidence in the record supporting his claim that Howard was instructed to file an appeal for petitioner.  In the absence of any other evidence corroborating petitioner's testimony or casting doubt on Howard's credibility, the undersigned concludes that petitioner has not met his burden of proving by a preponderance of the evidence that he invoked his right of appeal which his trial counsel failed to honor.[8]

Accordingly, in sum, petitioner has not demonstrated that he is entitled to relief on his claims alleged in Grounds One and Three of the petition that he was denied his constitutional right of appeal and that his trial counsel was ineffective in failing to file a timely notice of appeal requested by him.

### B.  Petitioner Waived The Claims Of Non-Jurisdictional Error Alleged In Ground Two Of The Petition By Pleading Guilty

In Ground Two of the petition, petitioner claims he was "unlawfully indicted" and that he is "factually innocent" of the criminal charges; he also alleges

---

[8] Moreover, even assuming, *arguendo*, that the evidence at best is "in equilibrium," the "issue  must be resolved against the party with the burden of proof."  *See Morris v. Payton,* 283 F.Supp. 63, 67 (W.D. Va. 1968).

that the police and prosecutor engaged in misconduct by violating his Fourth Amendment and due process rights. (Doc. 1, p. 5).

By pleading guilty, a defendant waives all non-jurisdictional defects in the proceedings. *United States v. Pickett,* 941 F.2d 411, 416 (6th Cir. 1991). A "guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *see also McMann v. Richardson,* 397 U.S. 759, 768-69, 771 (1970); *Campbell v. Marshall,* 769 F.2d 314, 318-19 (6th Cir. 1985), *cert. denied,* 475 U.S. 1048 (1986). Rather, he may only seek to attack the validity of his guilty plea by showing that under the circumstances, his guilty plea was not intelligently or voluntarily entered. *Tollett,* 411 U.S. at 267; *see also Campbell,* 769 F.2d at 315.

"The principal exception to this rule is the so-called *Blackledge/Menna* principle that 'a plea of guilty to a charge does not waive a claim that–judged on its face–the charge is one which the State may not constitutionally prosecute.'" *United States v. Drew,* 200 F.3d 871, 881 (D.C. Cir. 2000) (quoting *Menna v. New York,* 423 U.S. 61, 62-63 n.2 (1975) (*per curiam*)); *see also Blackledge v. Perry,* 417 U.S. 21 (1974).[9] The *Blackledge/Menna* exception for "jurisdictional" claims has

_____

[9] In *Blackledge,* 417 U.S. at 29-31, the Supreme Court held that the petitioner had not, by his guilty plea to a felony charge, waived his right to challenge that conviction based on the meritorious claim of prosecutorial vindictiveness stemming from the State's decision to bring the more serious felony charge as a penalty for his having successfully pursued an appeal to obtain a new trial from his first conviction on an indictment charging only a misdemeanor offense; the court reasoned that the claim was not waived because it implicated the "right not to be haled into court at all upon the felony charge" and thus "went to the very power of the State to bring the defendant into court to answer the charge brought against him." In *Menna,* 423 U.S. at 61-62, the Supreme Court extended *Blackledge* to allow review of a double jeopardy claim brought by a defendant who had served a 30-day contempt-of-court civil sentence for his failure to testify before a grand jury and who later was also convicted after pleading guilty to a criminal indictment based on the same conduct; in so holding, the Court stated: "We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive a claim *that judged on its face* the charge is one which the State may not constitutionally prosecute." *Id.* at 62.

not been extended "beyond the specific claims alleged in those cases" to encompass anything more than that the "applicable statute is unconstitutional or that the indictment has failed to state an offense." *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir. 1989) (quoting *United States v. Broncheau,* 597 F.2d 1260, 1262 n.1 (9th Cir.), *cert. denied,* 444 U.S. 859 (1979)), *amended on other grounds,* 907 F.2d 115 (9th Cir. 1990). In fact, in a later decision, the Supreme Court limited the *Blackledge/Menna* doctrine "to cases in which the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment." *Id.* (citing *United States v. Broce,* 488 U.S. 563, 569, 574-76 (1989)).

Here, to the extent petitioner seeks to challenge the propriety of his indictment and the conduct of the police and prosecutor in bringing the criminal charges, petitioner's allegations do not fall within the *Blackledge/Menna* exception or otherwise give rise to concerns of a jurisdictional defect which invalidated petitioner's guilty pleas. *Cf. United States v. Cotton,* 535 U.S. 625, 630-31 (2002) (indictment omissions do not deprive a court of "jurisdiction," or in other words, of "its power to adjudicate a case").[10]

Moreover, petitioner's conclusory allegations of error regarding his indictment, which involve the manner by which the accused is charged with a crime, do not give rise to a federal constitutional claim. Indeed, it is well-settled that there is not even a federal constitutional right to an indictment in state criminal proceedings. *Hurtado v. California,* 110 U.S. 516, 537-38 (1884); *see also Branzburg v. Hayes,* 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa,* 731 F.2d

_____

[10] *See also United States v. Ball*, 12 F.3d 214 (table), No. 93-3743, 1993 WL 524240 (6th Cir. Dec. 15, 1993) (unpublished) (in the absence of a showing that the indictment failed to state an offense, or of any claim that the defendant did not have notice of the charge against him or was misled by the indictment, the defendant failed to establish a jurisdictional defect which invalidated his guilty plea), *cert. denied,* 511 U.S. 1114 (1994); *Burrows v. Engle,* 545 F.2d 552, 553 (6th Cir. 1976) (guilty plea precluded petitioner from raising a claim based on "allegations of technical defects in the indictment"); *United States v. Quesada-Lerma,* 197 Fed.Appx. 308 (5th Cir. Aug. 28, 2006) (*per curiam*) (not published in Federal Reporter) (defendant waived his indictment claim by pleading guilty because an "allegedly defective indictment does not deprive a district court of jurisdiction"), *cert. denied,* 549 U.S. 1232 (2007); *United States v. Christian,* 184 Fed.Appx. 319, 321 (4th Cir. June 6, 2006) (*per curiam*) (not published in Federal Reporter) (holding that the defendant's challenges to his arrest and indictment were precluded by his guilty plea), *cert. denied,* 549 U.S. 966 (2006).

365, 369 (6ᵗʰ Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states. . . . It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule."); *Watson v. Jago,* 558 F.2d 330, 337 (6ᵗʰ Cir. 1977). As long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz,* 731 F.2d at 369; *Watson,* 558 F.2d at 338.

Moreover, by entering his unconditional guilty pleas, petitioner forfeited any claim of a violation of his Fourth Amendment rights by the police or prosecutor in this case. *See, e.g., United States v. Shoulders,* 102 Fed.Appx. 470, 470-71 (6ᵗʰ Cir. June 17, 2004) (not published in Federal Reporter) (defendant waived her right to appeal the denial of a suppression motion challenging the constitutionality of a search of her home, because she "forfeited any non-jurisdictional claims that she might have had regarding her conviction by entering a valid and unconditional guilty plea").[11]

Finally, by pleading guilty, petitioner forfeited his right to challenge the sufficiency of evidence supporting his convictions. *See, e.g., United States v. Martin*, 526 F.3d 926, 932-33 (6ᵗʰ Cir.) (holding that the defendant "waived his right to appeal the sufficiency of evidence supporting his conviction by entering a guilty plea that did not reserve the issue for appeal"), *cert. denied*, 129 S.Ct. 305 (2008).

_____

[11] *See also United States v. Guillory*, 100 Fed.Appx. 536, 539 (6ᵗʰ Cir. June 11, 2004) (not published in Federal Reporter) (petitioner failed to preserve his right to appeal the denial of his pre-plea suppression motion); *Lamb v. Sowders*, 899 F.2d 1222 (table), No. 89-5739, 1990 WL 40082, at *1 (6ᵗʰ Cir. Apr. 9, 1990) (unpublished) (district court properly dismissed the petitioner's claim that he was subjected to an illegal search, because the petitioner's knowing and intelligent guilty plea waived "non-jurisdictional defects in the proceedings, such as this search and seizure issue"), *cert. denied,* 498 U.S. 844 (1990); *United States v. Hewitt*, No. 07-30670, 2009 WL 1259068, at *1 (5ᵗʰ Cir. May 7, 2009) (unpublished) (citing *United States v. Wise*, 179 F.3d 184, 186 (5ᵗʰ Cir. 1999)); *United States v. Randall*, No. 08-4464-cr, 2009 WL 1256961, at *1 (2ⁿᵈ Cir. May 7, 2009) (unpublished) (citing *United States v. Arango*, 966 F.2d 64, 66 (2ⁿᵈ Cir. 1992)) ("[b]y pleading guilty ... [the defendant] waived his right to object to the constitutionality of the search"); *United States v. Hill*, 303 Fed.Appx. 363, 365 (7ᵗʰ Cir. Dec. 16, 2008) (not published in Federal Reporter) ("Hill waived any challenge to the constitutionality of the search by pleading guilty.").

Accordingly, in sum, the undersigned concludes, as argued by respondent in the return of writ, that petitioner waived the claims of non-jurisdictional error alleged in Ground Two of the petition when he voluntarily entered his guilty pleas in this case.

## C. Petitioner Is Not Entitled To Relief Based On His Remaining Ineffective Assistance Of Trial Counsel Claims Alleged In Ground Three Of The Petition

In addition to the claim addressed above stemming from the purported failure of petitioner's trial counsel to file a notice of appeal on petitioner's behalf, petitioner alleges in Ground Three of the petition that his trial counsel was ineffective in failing to investigate and to argue an "unlawful search & seizure," as well as in inducing petitioner to enter the plea agreements. (Doc. 1, p. 6).

As an initial matter, and as discussed above with respect to Ground Two of the petition, generally "once a guilty plea has been entered, all non-jurisdictional defects in the proceedings against a defendant are waived, and the waiver includes all claims of ineffective assistance of counsel, except insofar as the alleged the ineffectiveness relates to the voluntariness of the giving of the guilty plea." *United States v. Cavitt,* 550 F.3d 430, 441 (5th Cir. 2008) (quoting *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983), *cert. denied,* 466 U.S. 906 (1984)).[12]

Therefore, petitioner's claims stemming from counsel's purported failure to investigate or argue a Fourth Amendment violation, are subject to review only to the extent petitioner alleges that such misconduct amounted to ineffectiveness by counsel in advising or otherwise inducing petitioner to accept the plea agreement

---

[12] The court held that the petitioner's voluntary guilty plea waived ineffective assistance of counsel claims involving review of the prosecutor's file to verify laboratory test results, failure to investigate witnesses, and failure to contest the legality of the petitioner's arrest. *See also Parisi v. United States,* 529 F.3d 134, 138-39 (2nd Cir. 2008), *cert. denied,* 129 S.Ct. 1376 (2009); *Blackwell v. United States,* Nos. 2:07cv487 & 2:05cr66, 2008 WL 4619801, at *5 (S.D. Ohio Oct. 15, 2008) (Abel, M.J.) (Report & Recommendation) (and cases cited therein) (involving claim of ineffectiveness based on counsel's failure to file a pre-trial suppression motion), *adopted,* 2008 WL 4925789 (S.D. Ohio Nov. 13, 2008) (Holschuh, J.) (unpublished).

rather than proceed to trial.  *Cf. Cavitt,* 550 F.3d at 441; *Parisi,* 529 F.3d at 139.

To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced petitioner.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *see also Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985) (applying *Strickland* to guilty plea context).  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground.  *See Strickland,* 466 U.S. at 697.

In a case such as this involving a conviction obtained upon entry of guilty pleas, the second, "prejudice" prong of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *See Hill,* 474 U.S. at 59.   This means that in order to demonstrate prejudice in the guilty plea context, petitioner must show a reasonable probability exists that, but for counsel's alleged error, he would not have pleaded guilty and would have insisted on going to trial.  *See id.*

Here, petitioner's conclusory allegations are insufficient to establish that counsel's conduct was "deficient" under the first prong of the *Strickland* test.

First, with respect to petitioner's claim stemming from counsel's failure to investigate, petitioner argues only that "'if' counsel would ha[ve] investigated, [counsel] would have discovered that 'no' search warrant [had been] issued" by the police.  (Doc. 9, p. 6).  However, it appears from the police incident report submitted by petitioner as an attachment to his reply in opposition to the return of writ that, when the incident giving rise to the criminal charges occurred, the police were not attempting to effectuate a search but rather were attempting to locate and apprehend petitioner on a "Burglary warrant."  (*See id.*, Ex. E, p. 1).  Petitioner also has submitted copies of letters from petitioner's parents regarding an incident on November 18, 2005, when "several" Monroe and Middletown police officers entered their home "to look for our son."[13]  These allegations do not pertain, however, to the May 2005 incident giving rise to the criminal charges challenged

---

[13]  Apparently, petitioner's father was arrested and jailed on a charge of "obstructing official business" as a result of the November 18, 2005 incident.  (*See* Doc. 9, Ex. D, pp. 3-4).

herein.

For the same reasons, petitioner has not demonstrated that his counsel was ineffective in failing to argue an "unlawful search & seizure" under the Fourth Amendment. Moreover, petitioner is unable to prevail on any claim that his counsel should have argued the same Fourth Amendment violation that was alleged in his civil rights action filed against Monroe police officer Jeff Bowling. In that case, the Court entered summary judgment in the defendant's favor on the Fourth Amendment issue. *See Jason Williams v. Jeff Bowling,* No. 1:07cv146 (Barrett, J.; Hogan, M.J.) (Docs. 29, 36, 37). Therefore, it was neither unreasonable nor prejudicial for petitioner's counsel to fail to argue the issue to the trial court before advising petitioner to plead guilty.

Finally, petitioner has not demonstrated that his trial counsel improperly induced him to enter his guilty pleas in this case. Petitioner has argued in support of this claim that "my counsel told me that the judge['s] and the prosecution[']s best offer was five years, and if I didn't take it, I would get 26 years." (Doc. 9, p. 5). Petitioner continued: "This scared me to death, ... and then after my counseled guilty plea, at my sentenc[]ing hearing, the judge on the record states he had no idea about a plea at all and thought I wanted to pr[o]ceed to trial." (*Id.*).

The undersigned concludes easily that petitioner's counsel provided reasonable assistance in light of all the circumstances surrounding this case. It appears from the record, including the transcript of the evidentiary hearing held on April 20, 2009, that there was substantial evidence against petitioner on all the charges. However, counsel was able to negotiate a plea bargain that substantially reduced the amount of prison time that petitioner could have received if he had proceeded to trial and were convicted on the charges.

Indeed, counsel properly advised petitioner that he faced a maximum 26-year sentence if convicted on all charges after a jury trial. Moreover, as discussed above in addressing petitioner's ineffective assistance of counsel claim that was the subject of the evidentiary hearing on April 20, 2009, the undersigned believes Howard's testimony regarding the substance of the plea negotiations, including his recollection of Judge Sage's involvement in the matter, which was corroborated by the prosecutor and memorialized in the plea entry filed in Case No. CR2005-12-2157. In any event, it appears that contrary to petitioner's contention, the five-year sentence was the prosecution's "best offer" given Gregory Howard's undisputed

detailed recollection of the prosecutor's initial unwillingness to agree to a sentence of less than six years.

Judge Sage reiterated at petitioner's sentencing hearing on May 31, 2006 that petitioner faced a maximum sentence of 26 years on the charges, and suggested in his final comments that petitioner had "received every possible break the system could give" given his extensive criminal history and the negotiated substantial reduction in sentence to a five-year agreed sentence. The undersigned agrees with this assessment and finds that far from being ineffective, petitioner's trial counsel provided competent and effective assistance in advising petitioner to enter guilty pleas in this case.

Accordingly, in sum, petitioner is not entitled to habeas relief based on the remaining ineffective assistance of trial counsel claims alleged in Ground Three of the petition.

### D. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Four Challenging The Sentence Imposed, Which Was Agreed To As A Term Of The Parties' Plea Agreement

In Ground Four of the petition, petitioner claims that the five-year sentence imposed in this case created a "manifest injustice" and was both "contrary to law" and unconstitutional. (Doc. 1, p. 6). In order to obtain relief based on this claim, petitioner first must demonstrate that under Ohio law, he was granted the right to obtain review of the sentence that was imposed in accordance with the express terms of the parties' plea agreement.

Ohio Rev. Code § 2953.08(D) provides that a "sentence imposed upon a defendant is not subject to review . . . if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."

Therefore, contrary to petitioner's contention, he has no right granted by the state to challenge his sentence, which was jointly recommended by the defense and prosecution, unless it was not "authorized by law." *See Rockwell v. Hudson,* No. 5:06cv391, 2007 WL 892985, at *6 (N.D. Ohio Mar. 21, 2007) (unpublished) (citing *State v. Mathis,* 846 N.E.2d 1, 6 (Ohio 2006); *State v. Porterfield,* 829 N.E.2d 690, 691 (Ohio 2005) (syllabus)) ("Under Ohio law, a sentence imposed by

the trial court which is authorized by law and recommended jointly by the defense and prosecution is not subject to appellate review."); *Cornell v. Jeffries,* No. 2:05cv948, 2006 WL 2583300, at *8 (S.D. Ohio Sept. 7, 2006) (Smith, J.) (unpublished) (and numerous Ohio cases cited therein).

Here, petitioner's sentence was authorized by law to the extent it did not exceed the maximum term that the trial court was permitted by statute to impose on petitioner's convictions upon entry of his guilty pleas. *Cf. Cornell, supra,* 2006 WL 2583300, at *13 (and state case cited therein). As the judge indicated at the April 19, 2006 plea hearing, petitioner could have received a maximum prison sentence of twelve years on the charges of attempted vehicular assault, failure to comply with an order or signal of a police officer, failure to stop after an accident, driving under suspension and escape. (*See* Doc. 8, Ex. 17, Tr. 11).

To the extent petitioner alleges that his sentence was not "authorized by law" within the meaning of Ohio Rev. Code § 2953.08(D) because it was imposed in violation of *Blakely v. Washington,* 542 U.S. 296 (2004), the Ohio appellate courts are in accord that the line of Supreme Court cases leading up to and resulting from *Blakely* are inapplicable to a stipulated sentence authorized by state law and imposed in accordance with the parties' plea agreement, which relieves the onus of fact-finding from the trial court.[14]

---

[14] *See, e.g., State v. Brown,* No. 05AP-375, 2006 WL 225524, at *3 (Ohio Ct. App. 10 Dist. Jan. 31, 2006) (unpublished) (holding that because a *Blakely* claim "is premised upon the need for a jury to make certain statutorily required sentencing findings," and because no such findings are required under Ohio law when the parties agree to and jointly recommend the sentence that was imposed, *Blakely* could not be applied to the defendant's sentence), *appeal dismissed,* 848 N.E.2d 859 (Ohio 2006); *State v. Ranta,* No. 84976, 2005 WL 1705744, at *3 (Ohio Ct. App. 8 Dist. July 21, 2005) (unpublished) ("*Blakely* addresses only those instances in which a judge makes findings statutorily required for the imposition of certain sentences. Because we conclude in the case at bar that as a result of the plea agreement no findings were required, *Blakely* does not apply for this very specific reason.").

*See also State v. Spurling,* No. C-060087, 2007 WL 624993, at *3 (Ohio Ct. App. 1 Dist. Mar. 2, 2007) (unpublished) (citing *State v. Simmons,* No. C-050817, 2006 WL 3111415, at *2-3 (Ohio Ct. App. 1 Dist. Nov. 3, 2006) (*per curiam*) (unpublished), *appeal dismissed,* 862 N.E.2d 844 (Ohio 2007)); *State v. Nguyen,* No. L-05-1369, 2007 WL 1229306, at *5 (Ohio Ct. App. 6 Dist. Apr. 27, 2007) (unpublished); *State v. Billups,* No. 06AP-853, 2007 WL 853335, at *2 (Ohio Ct. App. 10 Dist. Mar. 22, 2007) (unpublished). *State v. Carrico,* No. 2005CA00324, 2007 WL 427909, at *3 (Ohio Ct. App. 5 Dist. Feb. 5, 2007) (unpublished); *State v. Giesey,* No.

Indeed, in analogous cases, this Court has consistently recognized that "by agreeing as a term of the plea bargain to a specified prison sentence . . . petitioner waived any argument that such sentence was imposed under statutory standards held to be unconstitutional by the [Ohio] Supreme Court in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), in light of *Blakely.* . . ." *Todd v. Wolfe,* No. 1:05cv737, 2007 WL 951616, at *7 n.8 (S.D. Ohio Mar. 28, 2007) (Spiegel, S.J.; Black, M.J.) (unpublished) (citing numerous Ohio appellate court decisions); *see also Crenshaw v. Hart,* No. 1:07cv575, 2008 WL 4877765, at *7 (S.D. Ohio Nov. 12, 2008) (Beckwith, C.J.; Black, M.J.) (unpublished) (and cases cited therein).[15]

A number of federal circuit courts have applied a similar rationale to defendants seeking to challenge their federal sentences in light of the Supreme Court's post-*Blakely* decision – *United States v. Booker*, 543 U.S. 220, 224 (2005), wherein the Court held that the Sixth Amendment as construed in *Blakely* applied to the federal Sentencing Guidelines and thus any fact (other than a prior conviction) which increases a sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See, e.g., United States v. Pacheco-Navarrete,* 432 F.3d 967, 971 (9th Cir. 2005) (concluding that remand for re-sentencing was "not required to comport with *Booker*" in case "where a

---

5-06-31, 2006 WL 3771982, at *2 (Ohio Ct. App. 3 Dist. Dec. 26, 2006) (unpublished); *State v. Bower,* No. 06CA3058, 2006 WL 3530134, at *3 (Ohio Ct. App. 4 Dist. Nov. 30, 2006) (unpublished); *State v. Kimble*, No. 2005-T-0085, 2006 WL 3350483, at *5 (Ohio Ct. App. 11 Dist. Nov. 17, 2006) (unpublished); *State v. Jackson,* No. 86506, 2006 WL 1705133, at *9 (Ohio Ct. App. 8 Dist. June 22, 2006) (unpublished), *appeal dismissed,* 855 N.E.2d 1260 (Ohio 2006); *State v. Woods,* No. 05CA0063, 2006 WL 1284613, at *2 (Ohio Ct. App. 2 Dist. May 5, 2006) (unpublished).

    [15] *Cf. Carley v. Hudson,* 563 F.Supp.2d 760, 777-78 & n.6 (N.D. Ohio 2008).  In so holding, the undersigned acknowledges there is a contrary decision from the Columbus Division of this Court.  *See Friley v. Wolfe,* No. 2:05cv396, 2006 WL 3420209 (S.D. Ohio Nov. 27, 2006) (Marbley, J.) (unpublished).  However, for the reasons set forth in *Warren v. Warden, Noble Corr. Inst.,* No. 1:06cv534, 2008 WL 1732976, at *5, *16-17 (S.D. Ohio Apr. 10, 2008) (Barrett, J.; Hogan, M.J.) (unpublished), the Court declines to follow *Friley. Cf. Suttles v. Wolfe,* 1:06cv55 (S.D. Ohio July 17, 2007) (Spiegel, S.J.; Hogan, M.J.) (Doc. 13, pp. 7, 10; *see also* Doc. 12, pp. 18-20) (unpublished) (where the district judge assigned to the instant case held in another analogous case that "despite the contrary decision in *Friley* ..., because the trial court imposed a sentence based on facts Petitioner admitted to in the plea agreement, and not on any judicially ascertained facts, Petitioner's sentence could not be in violation of the Sixth Amendment or *Blakely*").

defendant was sentenced after pleading guilty to a plea agreement that included a specific sentence stipulation that did not exceed the statutory maximum and was not contingent upon the Guidelines"), *cert. denied,* 549 U.S. 892 (2006).[16]

Here, petitioner was sentenced to a five-year prison term, which fell well within the statutory range authorized under Ohio law for the offenses of which petitioner was convicted under the terms of the plea agreements. The trial court imposed the precise sentence that the parties agreed to as part of their plea bargain. Because the sentence arose directly from the plea agreements in Case Nos. CR2005-12-2157 and CR2006-03-0462, and not from any additional facts to be found by the trial court, the court properly imposed sentence without any further judicial fact-finding, having previously determined at the April 19, 2006 plea hearing that petitioner had voluntarily, knowingly and intelligently entered the plea agreements, which included his express understanding and agreement to the five-year prison term. (*See* Doc. 8, Exs. 17-18).

Accordingly, in sum, the undersigned concludes that as a matter of state-law, the agreed-to sentence imposed by the trial court in this case was authorized by Ohio law and is not subject to review. In addition, because *Blakely* is inapplicable to such a sentence, which did not require any additional fact-finding by the sentencing judge, any claim of a constitutional violation lacks merit. Therefore, petitioner has not demonstrated he is entitled to relief based on the merits of the sentencing-error claim alleged in Ground Four of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the grounds for relief alleged in the instant petition, which were addressed on the merits herein, because petitioner has not made a substantial showing that he has stated any "viable claim of the denial of a constitutional right" or that any issue presented is

---

[16] *See also United States v. Silva,* 413 F.3d 1283, 1284 (10th Cir. 2005) (and cases cited therein); *United States v. Cieslowski,* 410 F.3d 353, 363-64 (7th Cir. 2005), *cert. denied,* 546 U.S. 1097 (2006); *United States v. Sahlin,* 399 F.3d 27, 32-33 (1st Cir. 2005).

"adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel,*
529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4
(1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).[17]

      3.  With respect to any application by petitioner to proceed on appeal *in
forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an
appeal of any Order adopting this Report and Recommendation would not be taken
in "good faith," and, therefore, **DENY** petitioner leave to appeal *in forma pauperis*
upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v.
Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  _6/3/09_                    _s/Timothy S. Black_____
      cbc                              Timothy S. Black
                                     United States Magistrate Judge

---

[17] Because the adjudication of these claims does not involve a procedural ruling, the two-part test enunciated in *Slack,* 529 U.S. at 484-85, for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Jason Williams,
      Petitioner

      vs                       Case No. 1:07cv653
                             (Spiegel, S.J.; Black, M.J.)

Warden, Noble Correctional
Institution,
      Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).